UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- x      **FOR PUBLICATION**
In re:
                                                                             Chapter 7

FMO Associates II, LLC,                           Case No.: 808-76102-reg

                    Debtor.

-------------------------------------------------------- x

## MEMORANDUM DECISION

Before the Court is a motion by FMO Associates II, LLC (the "Debtor") to convert its Chapter 7 case to a case under Chapter 11 pursuant to 11 U.S.C. § 706. The Debtor urges the Court to grant the motion arguing that it has not acted in bad faith and is therefore eligible to be a debtor under Chapter 11. The Chapter 7 Trustee, Kenneth Kirschenbaum, opposes the motion, arguing that conversion of the Debtor's case to a case under Chapter 11 would serve no purpose. The Trustee also argues due to the particular circumstances regarding the conduct of the Debtor before and during the pendency of the instant Chapter 7 case the Debtor has forfeited its right to convert the case to a case under Chapter 11. The Court finds the Supreme Court's recent decision *In re Marrama,* 549 U.S. 365 (2007), instructive in this case. Based on the totality of the circumstances, the Debtor's conduct does not rise to the requisite level of bad faith and thus the Debtor is eligible to be a debtor under Chapter 11. Accordingly, the Court grants the Debtor's motion.

*Facts*

On October 31, 2008 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. Kenneth Kirschenbaum was appointed Interim Trustee

1

on October 31, 2008 (the "Trustee"). The petition was filed without any schedules, statement of financial affairs or corporate resolution authorizing the filing. The Debtor owns an undeveloped parcel of land zoned for commercial use located in Bay Shore, New York (the "Property"). The Property consists of two separate tax lots, one of which constitutes approximately 90% of the Property. The Property is encumbered by a first mortgage held by Anthony Pirrera and ASPA Management Corp. (the "First Mortgagee"), which is security for a note in the original principal amount of $540,000. Prior to the date the petition was filed, the First Mortgagee had commenced a foreclosure action with respect to the Property. On August 25, 2008, a judgment of foreclosure was entered in favor of the First Mortgagee in the amount of $553,655.40. The Property is also encumbered by a second mortgage held by Alfred Giordano, in the outstanding amount of approximately $82,000. In addition to these two mortgages, the Property is encumbered by tax liens held by Suffolk County in the approximate amount of $38,000.

During the year prior to the Petition Date, the Debtor had marketed the Property for sale and retained Michael Salgo, Esq. as its real estate counsel to represent the Debtor in its efforts to sell the Property. Based on the offers the Debtor had received for the Property prepetition, the Debtor's principal believed that the value of the Property was less than the total amounts owed under the two mortgages and the tax lien.

At a point in time subsequent to the Petition Date the Trustee received from the Debtor's counsel schedules and the statement of financial affairs. However, these documents were not filed with the Court.[1]   According to the Trustee, the schedules listed the value of the Property at

---

[1]According to the Debtor's current attorney, the attorney initially retained to represent the Debtor in this case did not file the schedules and statement of financial affairs because he did not know how to file them electronically. As of the middle of January, the Debtor has been

2

less than the total amount of mortgages and liens encumbering the Property.

On November 17, 2008, the First Mortgagee filed a motion to vacate the automatic stay to permit the First Mortgagee to continue with the foreclosure against the Property. According to the affidavit in support of the motion, the value of the Property was estimated to be between $500,000 and $600,000 pursuant to an appraisal conducted for the First Mortgagee. The motion to vacate the stay was served on the Chapter 7 Trustee, the Debtor and counsel to the Debtor. The motion was granted unopposed at a hearing held on December 15, 2008. An order vacating the stay was entered on the Court's docket on December 17, 2008.

On January 19, 2009, the Debtor filed with the Court schedules and the statement of financial affairs. In the schedules, the value of the Property is listed as $770,000 and the total amount of liens on the Property is listed at $710,000. On January 22, 2009, the Debtor filed the instant motion to convert to Chapter 11 (the "Motion"). In the Motion, the Debtor revealed to the Court for the first time that the Debtor had entered into a contract of sale of the larger lot for $740,000. This exceeds the amount of the scheduled liens against the Property. Under the terms of the sale the Debtor would retain the smaller lot, which would be unencumbered. According to the Debtor, this remaining lot is worth approximately $30,000.

At the hearing on the Motion, counsel to the Debtor stated that the Debtor had solicited offers for the purchase of the Property well prior to the Petition Date and had circulated proposed contracts of sale, but had never expected to receive an offer after the Petition Date. If the Motion is granted, the Debtor intends to file a plan and disclosure statement as well as a request to approve the sale of the Property to the prospective purchaser, subject to higher and better offers.

---

represented by Kenneth Reynolds, Esq., who is an experienced bankruptcy attorney.

If the sale of the Property is approved and is consummated, there will be sufficient net proceeds to make a payment to unsecured creditors, which the Debtor lists in the total amount of $218,193.89.[2] In addition, the Debtor will retain for the benefit of the estate the ownership of the smaller lot. The Office of the United States Trustee appeared in support of the Motion on the grounds that it would be in the best interest of creditors to grant such motion and that the Trustee failed to introduce sufficient evidence that the Debtor acted in bad faith during the pendency of the Chapter 7 case. According to the United States Trustee, the Debtor's representation of the events was just as likely to be true as the Trustee's representation of the events, and without any evidence to support his argument, the Trustee's opposition should be overruled. The First Mortgagee also appeared at the hearing and did not oppose the Motion.

The Debtor asserts that it has a right to convert the case to Chapter 11 but for a showing of extreme circumstances. The Debtor argues that so long as the Court does not find that "extreme circumstances" exist which would preclude the granting of such relief, the Court should not interfere with the Debtor's right to seek conversion of its case. The Trustee opposes the motion and argues that the Debtor's right to convert is not absolute and in fact is limited by statute and case law. The Trustee argues that in this case conversion is not appropriate because it would serve no purpose as the Debtor has no "business" to reorganize. The Trustee also argues that under the reasoning set forth in *In re Marrama,* 549 U.S. 365 (2007) the Debtor's bad faith conduct while in Chapter 7 provides additional grounds to deny the Debtor's request.

### *Discussion*

---

[2] Based on the schedules filed with the Court, it appears that at least $67,000 of the unsecured debt is based on loans made by the Debtor's three principals.

Both the Debtor and the Trustee agree that a Chapter 7 debtor does not have an absolute right to convert to Chapter 11. Section 706(a) of the Bankruptcy Code provides that a "debtor may convert a case under this chapter to a case under chapter 11, 12, or 13 of this title at any time, if the case has not been converted under section 1112, 1208, or 1307 of this title. Any waiver of the right to convert a case under this subsection is unenforceable. Courts in this Circuit have recognized that despite the "seemingly absolute language" of this statute, a debtor's right to convert a Chapter 7 case to Chapter 11 under Section 706(a) is not absolute. First, the debtor must file a motion and give notice pursuant to Fed. R. Bankr. P. 1017(f)(2). As the Court in *In re Krishnaya* recognized, the fact that conversion under Section 706(a) requires a motion suggests that the Court's role in such motion "is more than a meaningless one." 263 B.R. 63, 66 (Bankr. S.D.N.Y. 2001). The Debtor has complied with this requirement.

The fundamental question presented in this case is what is the appropriate standard to apply in considering whether to grant or deny the Debtors motion to convert a case from Chapter 7 to a case under Chapter 11, and which party has the burden of persuasion. Recently, the Supreme Court issued a decision regarding whether a Chapter 7 debtor had an absolute right to convert to Chapter 13, and if there is no absolute right, whether the Court could take into consideration the debtor's bad faith conduct during the Chapter 7 case. In *In re Marrama,* 549 U.S. 365 (2007), the Supreme Court concluded that the Debtor's right to convert a Chapter 7 case to a case under Chapter 13 is not absolute and is specifically limited by § 706(d) of the Bankruptcy Code, which states that "[n]otwithstanding any other provision of this section, a case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter." In *Marrama,* the debtor filed inaccurate statements and schedules

5

which omitted information regarding the true value of an asset of the estate the debtor had transferred to a trust for which he was the sole beneficiary within one year of the filing date. The debtor had admitted that he made the transfer to protect this property from creditors, and then the debtor sought to convert his case to a case under Chapter 13. The Chapter 7 trustee opposed the motion and the bankruptcy court denied the debtor's motion. The Supreme Court affirmed the Bankruptcy Court and concluded that the debtor's bad faith conduct during a Chapter 7 case justified denial of the debtor's motion to convert.

The Supreme Court based its decision on the language of § 706(a), which when read together with § 706(d) of the Bankruptcy Code, limits a debtor's right to convert to a chapter for which the debtor qualifies to be a debtor. As a result, the debtor had to meet the eligibility requirements for a Chapter 13 debtor under § 109(e) of the Bankruptcy Code. *In re Marrama,* 549 U.S. at 372, 127 S. Ct. at 1110. The Supreme Court also looked to §1307(c) of the Bankruptcy Code to determine whether the debtor qualified to become a debtor under Chapter 13. According to the Court's reasoning, if the debtor's proposed Chapter 13 case would be subject to being dismissed or converted "for cause" because of bad faith conduct under §1307(c) then the debtor could not qualify to be a debtor under Chapter 13. The Court reasoned that "[i]n practical effect, a ruling that an individual's Chapter 13 case should be dismissed or converted to Chapter 7 because of prepetition bad-faith conduct, including fraudulent acts committed in an earlier Chapter 7 proceeding, is tantamount to a ruling that the individual does not qualify as a debtor under Chapter 13. That individual, in other words, is not a member of a class of 'honest but unfortunate debtor[s]' that the bankruptcy laws were enacted to protect." *In re Marrama,* 549 U.S. at 373, (citing *Grogan v. Garner,* 498 U.S. 279, 278 (1991)). The Supreme Court also

noted that the broad power conferred to bankruptcy courts by § 105(a) "is surely adequate to authorize an immediate denial of a motion to convert filed under § 706 in lieu of a conversion order that merely postpones the allowance of equivalent relief. . . . " *In re Marrama,* 549 U.S. at 375.

While the debtor in *Marrama* sought to convert his case to a case under Chapter 13 and not Chapter 11, a number of other courts have found *In re Marrama* to be instructive or applicable to facts similar to this case.  *See In re George Love Farming, LC*, 366 B.R. 170, 177-78 (Bankr. D. Utah 2007) (*Marrama* is instructive since the language of §706 applies equally in conversion to chapter 13 or chapter 11);  *In re Broad Creek Edgewater, LP,* 371 B.R. 752, 758 (Bankr. D. S.C. 2007) (*Marrama* applies equally in conversions to chapter 11 and chapter 13); *In re Irmen,* 2008 WL 320484 * 3 (Bankr. N.D. Ill. 2008) and *In re 10 Bears at Chiloquin, Inc.,* 2007 WL 1673538 *2 (Bankr. D. Or. 2007).  One case within this Circuit has also considered whether *Marrama* applies to a Chapter 7 debtor seeking to convert to Chapter 11.  In  *In re Euro-American Lodging Corp.,* 365 B.R. 421, 425 (Bankr. S.D.N.Y. 2007), Chief Judge Bernstein opined that *Marrama* has broader implications than its facts and "suggests that if 'cause' exists to convert or dismiss a hypothetical chapter 11 case, the chapter 7 debtor seeking to convert to chapter 11 is ineligible for relief under that chapter within the meaning of  §706(d)."

The Court agrees with these cases and finds that *Marrama* applies in cases such as this where the debtor seeks to convert from Chapter 7 to Chapter 11.  First, the Debtor seeks conversion under the same statute, with the same limitations imposed by § 706(d) regarding eligibility.  Second, like a Chapter 13 debtor, a Chapter 11 debtor is subject to conversion or dismissal of the case for "cause" (including but not limited to bad faith and the enumerated

7

grounds set forth in § 1112(b)(4) of the Bankruptcy Code).  As a result, the Supreme Court's analysis regarding whether "cause" exists to dismiss or convert the prospective Chapter 13 debtor's petition would apply equally to a prospective Chapter 11 debtor.

Having found *Marrama* to be applicable in this case, the Court must now consider how to apply *Marrama* in this case.  The bankruptcy court in *In re Broad Creek Edgewater, LP* recognized that while the Court will not review every motion to convert to determine the existence of grounds to deny the motion, it is the burden of the trustee or other objecting party to object to the motion to convert and join the issues for the Court to determine. 371 B.R. at 758 n. 6.  In this case, before the Court is an objection by the Trustee to the Motion.  It is the Trustee's burden to demonstrate by a preponderance of evidence why the Debtor, which qualifies under § 109 of the Bankruptcy Code to be a debtor under Chapter 11, should not be permitted to convert its case to a case under Chapter 11.  The Trustee asserts (1) that the Debtor's conduct during the pendency of this case amounts to bad faith, requiring denial of the Motion and (2) because the Debtor has no "business" to reorganize and would be proposing a plan of liquidation, converting the case would serve no purpose.

The issue of whether the Debtor has acted in bad faith was specifically considered by the *Marrama* Court.  It is instructive that the Supreme Court found that only "atypical" or "extraordinary" conduct of the debtor would give rise to a finding that the debtor acted in bad faith.  It is also notable that like in a Chapter 13 case under § 1307(c), a debtor's bad faith constitutes one of the unenumerated grounds to convert the case to Chapter 7 under § 1112(b). *In re C-TC 9th Ave. Partnership,* 113 F.3d 1304, 1309 (2nd Cir. 1997).  The Second Circuit has set forth certain factors a court may consider when determining whether a Chapter 11 petition

8

was indicative of a bad faith filing, including:

(1)     the debtor has only one asset;
(2)     the debtor has few unsecured creditors whose claims are small in relation to those of the secured creditors;
(3)     the debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt;
(4)     the debtor's financial condition is, in essence, a two party dispute between the debtor and secured creditors which can be resolved in the pending state foreclosure action;
(5)     the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights;
(6)     the debtor has little or no cash flow;
(7)     the debtor can't meet current expenses including the payment of personal property and real estate taxes; and
(8)     the debtor has no employees.

113 F.3d at 1311 (citing *Pleasant Pointe Apartments, Ltd.v. Kentucky Housing Corp.,* 139 B.R. 828, 832 (W.D. Ky. 1992)). Evidence of a debtor's overall intent to abuse the judicial process and to subvert the reorganization provisions can also constitute evidence of bad faith. *In re Copy Crafters Quickprint, Inc.,* 92 B.R. 973, 985 (Bankr. N.D.N.Y. 1988) (citing *In re Albany Partners, Ltd.,* 749 F.2d 670, 674 (11th Cir. 1984)).

     This Court believes that based on the factors set forth above, it is appropriate to adopt a "totality of circumstances" approach in determining whether the Debtor's conduct rises to the requisite level of bad faith such that the Debtor should be denied the opportunity to convert its case. Under this approach, the Court has the flexibility to consider the specific circumstances of each case and to ensure that only the conduct of a debtor which is truly out of the norm constitutes cause to deny conversion to Chapter 11.

    In this case, the Trustee is not relying on whether the Debtor filed the petition for the purposes of frustrating the First Mortgagee, which is the only other party in interest appearing in this case. Rather, the Trustee asserts that the Debtor manipulated and abused the bankruptcy

process for the purpose of hiding assets. During the hearing on the Motion, the Trustee pointed to the Debtor's failure to provide accurate values for the Property in the schedules which were not filed with the Court and the failure to disclose the existence of the contract for the sale of the Property earlier than mid-January. Furthermore, the Trustee alleges in his responsive papers that the Debtor must be making the Motion to prevent the Trustee from investigating the Debtor's prepetition financial affairs. None of these allegations are supported by testimony or other evidence beyond the two sets of schedules prepared in this case. The Debtor's current bankruptcy counsel explained that the initial schedules were prepared prior to the receipt of the offer on the Property, and as soon as the offer was received, the Debtor filed schedules reflecting the actual value of the Property and advised the Trustee of the contract of sale. The Debtor asserts that there was no way of knowing, at the time the petition was prepared, that the Debtor would receive the offer to purchase the Property at a price in excess of the mortgages and liens.

The Office of the United States Trustee stated that it had no objection to the relief requested by the Debtor and the Debtor's version of the facts was just as likely to be accurate. The First Mortgagee has not opposed the Motion and consents to conversion of the case and the sale of the Property by the Debtor so long as the sale is consummated quickly. Therefore, while the Debtor's situation does have some of the earmarks of bad faith set forth above, the First Mortgagee, which is the party which would potentially be harmed by the conversion, has no objection and the Trustee has not met his burden of establishing that the Debtor acted in bad faith that rises to the level of being so extraordinary as to warrant a finding that the debtor is ineligible to be a debtor under Chapter 11.

The Trustee also asserts that the Motion should be denied because conversion of the case

would serve no purpose. According to the Trustee, the only course of conduct the Debtor can take is to sell the Property and file a liquidating plan, which is basically what the Trustee would do in this case as well. Based on this fact and the fact that the Debtor has no "viable" business to protect, the Trustee believes that denial of the Motion is warranted. The Court disagrees.

While it is true that a Chapter 11 debtor must demonstrate an ability to effectuate a viable plan of reorganization, the Debtor's proposal to file a liquidating plan, which is permitted under § 1123(b)(4) of the Bankruptcy Code, does not render conversion an exercise in futility. Courts have recognized that "where liquidation would proceed more expeditiously and less expensively under the control of the debtor", conversion from Chapter 11 to Chapter 7 may not be warranted. *In re McDermott,* 78 B.R. 646, 651 (Bankr. N.D.N.Y. 1985). *See In re Copycrafters Quickprint, Inc.,* 92 B.R. at 985-86 (There are instances where liquidation under Chapter 11 is preferable to a Chapter 7 proceeding because the debtor in possession may be in a better position to dispose of the assets in a less expensive and more orderly manner than a trustee) (other citations omitted). In this case, it is conceded that the sale of the Property, which is the Debtor's most valuable asset, will proceed more quickly and perhaps less expensively if it takes place in Chapter 11. These facts, taken together with the U.S. Trustee's assertion that it is in the best interest of the creditors of this case to grant the Motion, undercut the Trustee's argument. The purposes of the Debtor and the creditors will best be served by converting the case to Chapter 11.

### *Conclusion*

For the foregoing reasons, the Court finds that the Debtor has presented adequate grounds for granting the Motion. The Trustee has failed to meet his burden of demonstrating by a preponderance of the evidence that the Motion should be denied on the grounds that the Debtor

acted in bad faith or that conversion of this case would serve no proper purpose.

An order consistent with this Memorandum Decision shall be issued forthwith.

Dated: Central Islip, New York
      February 13, 2009                            By: ***/s/ Robert E. Grossman***
                                                          Robert E. Grossman
                                                          United States Bankruptcy Judge